# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

OMAR ENCARNACION, individually
and on behalf of all others similarly
situated,

      Plaintiff,

v.                              Case No:   2:17-cv-566-FtM-38CM

FINANCIAL CORPORATION OF
AMERICA,

      Defendant.

---

## REPORT AND RECOMMENDATION[1]

This matter comes before the Court upon review of Plaintiff's Motion for Class Certification Pursuant to FRCP 23, Defendant Financial Corporation of America's ("FCA") response in opposition and Plaintiff's reply.  Docs. 31, 34, 38.[2]  Plaintiff seeks to certify this case as a class action under Federal Rule of Civil Procedure 23(b)(3), to designate himself class representative and to appoint Yitzchak Zelman,

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

[2] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Esq. of Marcus & Zelman, LLC as class counsel.   FCA opposes certification of Plaintiff's proposed class.   *See generally* Doc. 34.   Because the proposed class meets all the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3), the Court respectfully recommends Plaintiff's motion be **GRANTED.**

## I.   Background

Plaintiff filed a Class Action Complaint against FCA on October 16, 2017, alleging one count of violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*   Doc. 1.   Plaintiff alleges he is a "consumer," and FCA is a collection agency and "debt collector" under the FDCPA.   *Id.* ¶¶ 8-9, 11 (citing 15 U.S.C. § 1692a(3), (6)).   Plaintiff asserts he allegedly incurred a debt to creditor Lehigh Regional Medical Center some time prior to June 26, 2017.   *Id.* ¶¶ 13-16 (citing 15 U.S.C. § 1692a(4)-(5)).   Plaintiff claims Lehigh Regional Medical Center contracted FCA to collect the debt, and FCA sent Plaintiff a collection letter on June 26, 2017.   *Id.* ¶ 17, 19.   The following information was located in the top right corner of the letter:

> ACCOUNT IDENTIFICATION
> Re: Lehigh Regional Medical Center
> Account number     : [Redaction]3948
> Patient Name        : Omar Encarnacion
> Date of Service     : 11-07-16
> Balance Due         : $53.27

Doc. 1-1 at 3; *see also* Doc. 1 ¶ 21.   Plaintiff alleges the letter failed to clearly and explicitly identify Lehigh Regional Medical Center as the current creditor to whom the debt is owed as required by the FDCPA.   Doc. 1 ¶¶ 22, 24-25, 27, 32, 48; *see* 15 U.S.C. § 1692g(a)(2).   Accordingly, Plaintiff seeks actual damages, statutory

damages, costs and attorneys' fees.  Doc. 1 ¶ 49.  Plaintiff's Complaint sought to bring his claim on behalf of the following class:

> (a) all individuals with addresses in the State of Florida (b) to whom [FCA] (c) sent an initial collection letter attempting to collect a consumer debt (d) without properly identifying the name of the creditor to whom the alleged debt was owed (e) which letter was sent on or after a date one year prior to the filing of this action and on or before a date 21 days after the filing of this action.

*Id.* ¶ 36.  FCA filed its Answer on November 22, 2017.  Doc. 7.

On June 8, 2018, the Court entered a Case Management and Scheduling Order setting the discovery deadline in this case for December 3, 2018, the dispositive motion deadline for January 2, 2019, and the trial for May 6, 2019.  Doc. 29. Following multiple requested extensions, Plaintiff filed his motion for class certification on July 9, 2018, and FCA responded in opposition on August 6, 2018. Docs. 31, 34; *see also* Docs. 12, 13, 24, 27, 28, 32, 33.  Plaintiff sought leave to file a reply brief, which the Court granted over FCA's objection, and Plaintiff filed his reply brief on August 15, 2018.  Docs. 35, 36, 37, 38.  The matter is now ripe for review.

## II.  Analysis

A plaintiff raising a class claim must have standing to raise the claim and "establish that the proposed class is adequately defined and clearly ascertainable." *See Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (internal quotation marks omitted); *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008).  Once those threshold issues are established, the Court must conduct a rigorous analysis to determine whether the proposed class (1) meets all the requirements specified in Federal Rule of Civil Procedure 23(a) and (2) fits at least

one of the types of class actions defined in the three sub-sections of Rule 23(b).   *See*
*Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787-88 (11th Cir.
2014); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009).   Rule 23(a)
contains four prerequisites: numerosity, commonality, typicality and adequacy of
representation.   *See* Fed. R. Civ. P. 23(a)(1)-(4).   Relevant here, a proposed class
under Rule 23(b)(3) must satisfy an additional two elements: predominance and
superiority.   Fed. R. Civ. P. 23(b)(3); *Landeros v. Pinnacle Recovery, Inc.*, 692 F.
App'x 608, 610 (11th Cir. 2017).   The party seeking class certification bears the
burden of proving all the prerequisites are met.   *Brown v. Electrolux Home Prods.,*
*Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016).   The Court will address each requirement
in turn.

> a. *Standing*

Standing is an essential component of a federal court's subject matter
jurisdiction over a claim.   *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408-09
(2013).   Standing requires that: (1) the plaintiff suffer an actual or imminent injury
that is "'concrete and particularized'" and not "'conjectural or hypothetical;'" (2) the
injury be fairly traceable to the defendant's conduct; and (3) a favorable decision
likely would redress the plaintiff's injury.   *Ne. Fla. Chapter of Associated Gen.*
*Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663-64 (1993) (quoting *Lujan*
*v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).   Here, there is no dispute that
Plaintiff received a debt collection letter from FCA.   *See, e.g.*, Doc. 34 at 2.   Plaintiff
alleges the letter failed to sufficiently identify the current creditor in violation of his

rights under the FDCPA.  Doc. 1 ¶¶ 19-27, 32-33, 46-49.  An award of statutory damages under the FDCPA would remedy the alleged injury.  *See id.* at 17. Further, FCA does not contest Plaintiff's standing.  Therefore, the Court recommends Plaintiff has standing to pursue his claim on behalf of himself and the proposed class.

### b.  *Class Definition and Ascertainability*

"An identifiable class exists if its members can be ascertained by reference to objective criteria."  *Bussey*, 562 F. App'x at 787.  In other words, a class is ascertainable if its members can be determined through administratively feasible methods that do not require much individualized inquiry.  *See id.*; *see also Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 947-48 (11th Cir. 2015).  Here, Plaintiff defines the proposed class as follows:

> All consumers in the State of Florida who were sent a L2N Collection Letter[3] from the Defendant, during the time period of October 16, 2016 to the present, attempting to collect an obligation owed to or allegedly owed to Lehigh Regional Medical Center.

Doc. 31 at 11.

The crux of FCA's opposition to certification of Plaintiff's proposed class— which permeates through all of FCA's arguments—is that Plaintiff failed to demonstrate the proposed class is ascertainable because Plaintiff did not provide "evidentiary proof" that he could feasibly identify class members without significant individual inquiry.  *See generally* Doc. 34.  In support of this contention, FCA

---

[3]  FCA identified the format of the collection letter at issue in this case as a "L2N template letter."  *See* Doc. 31 at 10; Doc. 38-1 at 3-4.

explains that for Plaintiff to establish entitlement to relief under the FDCPA, he "must make a threshold showing that the money being collected qualifies as a 'debt' as defined by the FDCPA," which encompasses only payment obligations incurred "primarily for personal, family, or household purposes." *Id.* at 8-9 (internal quotation marks omitted) (quoting *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836-37 (11th Cir. 2010)); *see* 15 U.S.C. § 1692a(5). Although conceding "Plaintiff can possibly establish the first requirement of ascertainability as [FCA] can identify how many addresses in the state of Florida received a certain letter during a certain time frame," FCA contends this method is insufficient to ascertain class members because it would not identify which persons incurred a payment obligation to Lehigh Regional Medical Center for primarily personal, family, or household purposes. *Id.* at 10 (internal quotation marks omitted). Thus, as Plaintiff failed to explain how FCA's records could aid in identifying which addressees owed a debt as defined by the FDCPA, the proposed class cannot not be ascertained without significant individual inquiry. *See id.* at 10-13.

As Plaintiff points out, however, FCA sent 3,456 L2N Collection Letters to addresses in Florida "relative to a delinquent account assigned to it by Lehigh Regional Medical Center," a "facility that provides medical services to individuals." Doc. 38 at 1-2. The template L2N Collection Letter contains a space for "Patient Name" and "Date of Service," which indicates the alleged payment obligations were incurred as a result of medical services. *See id.* at 2; *see also* Doc. 31-2. Thus, notwithstanding FCA's careful avoidance of magic words such as "debtors,"

"consumers" and "medical bills" in its discovery responses, FCA fails to explain how medical services incurred by patients can be for any purpose other than personal. *See* Doc. 34 at 11-12

Further, FCA's reliance on *Karhu* is misplaced.   In *Karhu*, the plaintiff sued Vital Pharmaceuticals, Inc. ("VPX"), for falsely advertising that a dietary supplement ("Meltdown") aided fat loss.   621 F. App'x at 946.   In moving for class certification, the plaintiff identified only one method for identifying individuals who had purchased Meltdown: using VPX's "sales data."   *Id.*   Because VPX sold primarily to distributors and retailers, however, VPX's records would not necessarily identify consumers.   *See id.*   Permitting class members to identify themselves through receipts was impractical because Meltdown's low cost made it unlikely potential class members would retain any proof of purchase, and an affidavit-based approach to self-identification was not administratively feasible because "VPX would be deprived of its due process rights to challenge the claims of each putative class member" or would have to contest each affidavit in "a series of mini-trials to determine class membership."   *Id.* at 946-47.   The district court thus denied the plaintiff's motion, finding the proposed class was not ascertainable.   *Id.*

Because it was unclear how the use of VPX's "sales data" would aid in identifying class members or whether self-identification through affidavit could successfully operate, the Eleventh Circuit affirmed.   *Id.* at 949.   The court noted that "[a] plaintiff cannot establish ascertainability simply by asserting that class members can be identified using the defendant's records; the plaintiff must also

establish that the records are in fact useful for identification purposes, and that identification will be administratively feasible." *Id.* at 948. In the same vein, the court found proposing that class members self-identify through affidavits would not be sufficient "without first establishing that self-identification is administratively feasible and not otherwise problematic." *Id.* FCA also relies on *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013), another case involving false advertisement of a diet supplement. The Third Circuit vacated the district court's order certifying a class of consumers who had purchased the diet supplement because the class members were not ascertainable. *Id.* at 304. There, too, the plaintiff failed to explain how reviewing retailers' records could facilitate identification of consumers who purchased the supplement. *Id.* at 308-309.

Here, however, there is no such problem identifying potential class members. FCA has the names and addresses of the individuals to whom it sent L2N Collection Letters. *See* Doc. 34 at 10; *see also* Doc. 31-3 at 6-8. As discussed, the template of the Letter—especially the references to "Patient Name" and "Date of Service"—as well as the relevant creditor, a medical facility, indicate the addressees' alleged payment obligations were primarily for personal, family, or household purposes— namely, medical services. *See* Doc. 31-2; Doc. 38-1 at 3-4 (indicating nothing in the L2N Collection Letter template changes other than the personal identifying information of the debtor, the name of the creditor, the date, and the balance due); *see, e.g.*, *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 669 (M.D. Fla. 1999) (certifying FDCPA class composed of individuals in Florida who were sent a form collection letter

"in connection with attempts to collect debts which are shown by Defendants' records to be primarily for personal, family, or household purposes, *e.g.—medical services*" (emphasis added)); *see also* 15 U.S.C. § 1692a(5). Therefore, no individualized inquiry or self-identification is needed; the address list, in and of itself, identifies the potential class members. Accordingly, the Court recommends the proposed class is ascertainable.

### c. *Rule 23(a) requirements*

#### i. Numerosity

To satisfy the numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable," although "a plaintiff need not show the precise number of members in the class." Fed. R. Civ. P. 23(a)(1); *Vega,* 564 F.3d at 1267 (quoting *Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 930 (11th Cir. 1983)). The Eleventh Circuit has noted, "generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986). "Factors to be considered are the geographic dispersion of the class members, judicial economy, and the ease of identifying the members of the class and their addresses." *Kubiak v. S.W. Cowboy, Inc.,* No. 3:12-cv-1306-J-34JRK, 2014 WL 2625181, at *12 (M.D. Fla. June 12, 2014).

Here, FCA indicated "it sent 3,456 letters to addresses in the State of Florida similar to the letter sent to Plaintiff"—i.e., the L2N Collection Letter template— "relative to a delinquent account assigned to it by Lehigh Regional Medical Center."

*See* Doc. 31-3 at 6; *see also* Doc. 31 at 10; Doc. 38-1 at 3.   Joining over 3,000 parties throughout the State undoubtedly would be impracticable.   As this number far exceeds what it required under Rule 23(a)(1) and FCA does not challenge the numerosity of the proposed class, the Court recommends the proposed class satisfies the numerosity requirement.   *See Cox*, 784 F.2d at 1553; *see also Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699-700 (M.D. Fla. 2000) (finding numerosity requirement satisfied in FDCPA case where over 200 consumers received the same collection letter).

### ii. Commonality

To satisfy the commonality requirement, there must be "questions of law or fact common to the class."   Fed. R. Civ. P. 23(a)(2).   The common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke."   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). Additionally, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"   *Dukes*, 564 U.S. at 349-50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).

Here, Plaintiff claims the commonality requirement is satisfied because all of the proposed class members received the same collection letter from FCA.   Doc. 31 at 14.   The Court agrees.   Simply put, the L2N Collection Letter either violates the FDCPA, or it does not.   Whether the L2N Collection Letter sufficiently identifies the

current creditor essentially is the only issue in this case—resolution of that single issue will determine the validity of each class member's claim in one stroke. Indeed, many courts have found the commonality requirement satisfied in FDCPA cases where all proposed class members received the same allegedly violative collection letter. *See Baez v. LTD Fin. Servs., LP*, No. 6:15-cv-1043-Orl-40TBS, 2016 WL 3189133, at *3 (M.D. Fla. June 8, 2016) (finding commonality requirement met where all class members in FDCPA case received the same letter from the defendant); *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, 2008 WL 3850657, at *3 (M.D. Fla. Aug. 14, 2008) (same); *see also Swanson*, 186 F.R.D. at 668 ("To establish commonality [in an FDCPA action], it is sufficient that Plaintiff allege that all class members received the same collection letter."). Accordingly, the Court recommends the proposed class satisfies the commonality requirement.

### iii.  Typicality

To satisfy the typicality requirement, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Busby,* 513 F.3d at 1322 (quoting *Cooper v. S. Co.,* 390 F.3d 695, 713 (11th Cir.2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.,* 546 U.S. 454 (2006)). Typicality, in other words, "measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Id.* (quoting *Cooper*, 390 F.3d at 713). A sufficient nexus exists "if the claims or defenses of the

class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Ault v. Walt Disney World Co.,* 692 F.3d 1212, 1216 (11th Cir. 2012) (quoting *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984)).   "The main focus of the typicality requirement is that the plaintiffs will advance the interests of the class members by advancing their own interests." *Prindle v. Carrington Mortg. Servs., LLC,* No. 3:13-cv-1349-J-34PDB, 2016 WL 4466838, at *5 (Aug. 24, 2016).

As discussed in reference to commonality, the sole claim is whether the L2N Collection Letter sufficiently identified the current creditor under the FDCPA. Plaintiff and the entire proposed class received the same template L2N Collection Letter.   Plaintiff asserts there is no conflict between his claims and those of the class, and it appears the advancement of Plaintiff's interests will advance those of the class members as well.   *See* Doc. 31 at 15.   Therefore, the Court recommends Plaintiff's claim is typical of the class.

### iv.  Adequacy of Representation

To satisfy the adequacy requirement, the Court must find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).   This requirement "requires two inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class[,] and (2) whether the representatives will adequately prosecute the action." *Dickens v. GC Srvs. Ltd. P'ship,* 706 F. App'x 529, 535 (11th Cir. 2017) (internal quotation marks omitted) (alteration in original) (quoting *Valley Drug Co. v. Geneva Pharm., Inc.,* 350

F.3d 1181, 1189 (11th Cir. 2003)).   In the first inquiry, the court should analyze whether class members have opposing interests or whether the class consists of members who benefit from the same acts alleged to have harmed other members of the class.   *See Valley Drug,* 350 F.3d at 1189; *Pickett v. Iowa Beef Processors,* 209 F.3d 1276 (11th Cir. 2000).   Minor conflicts between the representative and the class will not defeat class certification; however, if the conflict is a "fundamental" one that goes to the specific issues in controversy, then class certification is not appropriate. *Valley Drug,* 350 F.3d at 1189 (internal citation omitted).   The court must also consider the competency and any conflicts of class counsel.   *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 626 n.20 (1997); *see also Griffin v. Carlin,* 755 F.2d 1516, 1533 (11th Cir. 1985) ("The adequate representation requirement involves questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation[.]").

Here, there do not appear to be any conflicts of interest between Plaintiff and the proposed class.   Plaintiff, on behalf of himself and the putative class members, seeks to hold FCA liable for allegedly violating the FDCPA by insufficiently identifying the current creditor in a template debt collection letter.   There are no apparent conflicts of interest that would preclude him from acting as class representative.   Further, proposed class counsel Yitzchak Zelman, Esq. and Marcus & Zelman, LLC have "recovered millions of dollars on behalf of consumers who had been victimized by abusive and deceptive collection practices as well as individuals whose consumer rights had been violated."   Doc. 31 at 19.   Mr. Zelman is a founder

of Marcus & Zelman, LLC, and he has been licensed to practice law in New Jersey since 2012.  Doc. 31-1 at 3.  Mr. Zelman has extensive experience practicing consumer protection law, including serving as plaintiff's counsel in over four hundred (400) FDCPA cases in federal courts nationwide.  *Id.* at 3-4; *see also* Doc. 31 at 20. FCA does not challenge Plaintiff's or class counsel's ability to adequately represent the class.  *See generally* Doc. 34.  Accordingly, the Court recommends the adequacy of representation requirement is met and that Mr. Zelman be authorized to serve as class counsel.

### a.  *Rule 23(b)(3) Requirements*

#### i.  **Predominance**

To determine if a class action may be maintained under Rule 23(b)(3), the court must evaluate whether "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  Common questions predominate "if they ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims or each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Srvs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks and emphasis omitted) (alteration in original) (quoting *Vega*, 564 F.3d at 1266).  The predominance requirement is not met where "after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual

claims." *Id.* (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). Thus, when evaluating the predominance requirement, the Court "must take into account the claims, defenses, relevant facts, and applicable substantive law, to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." *Vega*, 564 F3d at 1274 (internal quotation marks and emphasis omitted) (quoting *Klay*, 382 F.3d at 1254); *see Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) ("Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action.").

To prevail on an FDCPA claim, the plaintiff must prove: (1) the plaintiff was subject to a collection activity arising from a consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant engaged in an act or omission prohibited under the FDCPA. *Erickson v. Gen. Elec. Co.*, 854 F. Supp. 2d 1178, 1182 (M.D. Fla. 2012). Here, whether (1) the L2N Collection Letter sent after incurring a debt to Lehigh Regional Medical Center was a collection activity arising from a consumer debt, (2) FCA is a debt collector as defined by the FDCPA, and (3) FCA failed to sufficiently identify the current creditor under § 1692g(a)(2) of the FDCPA, are all legal questions arising from nearly identical factual circumstances. Indeed, as many courts have noted, "parties seeking class certification [in FDCPA cases] may satisfy the predominance element by showing that all class members' claims were derived from the same letter." *Agan v. Katzman & Korr, PA*, 222 F.R.D. 692, 700 (S.D. Fla. 2004); *see also Fuller*, 197 F.R.D. at 701 (finding the predominance

requirement met where "[t]he essential common factual link between all of the prospective class members is the letters sent by Defendants.   Plaintiffs' basis for the claim is the language and content of the letters.").

FCA's only argument against predominance challenges the assumption that the proposed class members' payment obligations to Lehigh Regional Medical Center qualify as consumer debts under the FDCPA, which is merely an extension of FCA's argument against ascertainability.   *See* Doc. 34 at 18.   As discussed above, this argument is without merit.   FCA sent the same template letter to all of the proposed class members, who all allegedly owed money to Lehigh Regional Medical Center. *See* Doc. 31-3 at 5-6.   The language of the letter and the creditor at issue demonstrate the proposed class members' payment obligations arose from medical services, which undoubtedly have a personal, family, or household purpose.   *See id.*; *see also* Doc. 31-2; 15 U.S.C. § 1692a(5).   Class-wide determination of whether the L2N Collection Letter violates § 1692g(a)(2) of the FDCPA will leave few—if any—remaining questions requiring individualized inquiry or proof.   Therefore, the Court recommends the predominance requirement is met in this case.

### ii.  Superiority

Rule 23(b)(3) also requires the Court to determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," and it provides a list of factors to consider:

(A) the class members' interest in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D); *see Vega*, 564 F.3d at 1278 ("In determining superiority, courts must consider the four factors of Rule 23(b)(3)." (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001)).   The main focus of the superiority analysis is the relative advantages of maintaining a class action as opposed to other available litigation mechanisms.   *Sacred Heart Health Sys.*, 601 F.3d at 1183-84.

The FDCPA expressly contemplates the utilization of class actions in its enforcement.   *See* 15 U.S.C. § 1692k(a)(2)(B); *see also Gaalswijk-Knetzke*, 2008 WL 3850657, at *5 (noting Congress did not contemplate large numbers of individual suits under the FDPCA and instead provided for class action recovery to "overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action"). Thus, courts generally have found class actions to be a superior method for resolving FDCPA claims arising from template collection letters.   As one court in this district explained:

> [G]iven the large number of claims, the relatively small amount of damages available, the desirability of consistently adjudicating the claims, the high probability that individual members of the proposed clas[s] would not possess a great interest in controlling the prosecution of the claims, and the fact that it would be uneconomical to litigate the issues individually, a class action is the superior method by which [the plaintiff] and the class members' claims under the FDCPA should be adjudicated.

*Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 663 (M.D. Fla. 2015); *see also Klewinowski v. MFP, Inc.*, No. 8:13-cv-1204-T-33TBM, 2013 WL 5177865, at *4-5 (M.D. Fla. Sept. 12, 2013); *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 522 (S.D. Fla. 2013). All the same reasoning applies here. Class action litigation unquestionably would be preferable to thousands of individual suits concerning whether the L2N Collection Letter violates the FDCPA because it would ensure a consistent, efficient and economical outcome. *See Roundtree*, 304 F.R.D. at 663. Further, as Plaintiff also points out, class members may not know about their claims against FCA or be capable of protecting their interests independently. Doc. 31 at 18-19. Accordingly, notwithstanding FCA's repeated protestation on ascertainability grounds, the Court recommends the superiority requirement is satisfied. *See* Doc. 34 at 19.

## III.  Conclusion

For the reasons stated herein, the Court respectfully recommends the proposed class be certified as a class action under Rule 23(b)(3) and Yitzchak Zelman of Marcus & Zelman LLC be authorized to serve as class counsel.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.    Plaintiff's Motion for Class Certification Pursuant to FRCP 23 (Doc. 31) be **GRANTED** under Federal Rule of Civil Procedure 23(b)(3), and the following class be certified:

> a.  All consumers in the State of Florida who were sent a L2N Collection Letter from the Defendant, during the time period of October 16,

2016 to the present, attempting to collect an obligation owed to or allegedly owed to Lehigh Regional Medical Center.

2.     Plaintiff Omar Encarnacion be designated class representative and Yitzchak Zelman, Esq. of Marcus & Zelman, LLC be authorized to serve as class counsel.

**DONE** and **ENTERED** in Fort Myers, Florida on this 14th day of November, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record